UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CARL DWAYNE CRAWFORD,
           Plaintiff,

v.

JUAN BALTAZAR, Warden; MONICA
RECKTENWALD, Warden; MATTHEW
WHINNERY, Captain; DAVID SUSNEY, SIS
Lieutenant; ROBERT POITRAS, Lieutenant;
JOE NALEPA, Lieutenant; MARK PALMER,
Lieutenant; BRAIN SUDUL, Lieutenant; J.M.
BANKS, DHO; MITCHELL CURESKY,
Counselor; KETTISHA-MANSON WALKER,
Case Manager; CHRISTIAN CONKLIN, CO;
LUIS CAQUIAS, CO; SEAN ARTHUR
CORRICE, CO; MIGUEL RAMOS, CO;
RAMON SANATABRISOTO, CO; JASON
BASTEDO, CO; ANITA COCHOO, Unit
Manager; CHARLES E. SAMUELS, Director of
BOP; J.L. NORWOOD, Director of BOP;
THOMAS R. KANE, Director of BOP;
RICHARD M. WINTER, Director of BOP; A.M.
JOHSON, Supervisory Attorney; CHARLES E.
DANIELS, Warden; M. RAEBEL, Lieutenant; J.
SCHALENSEE, Case Manager,
           Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

15 CV 9427 (VB)

Briccetti, J.:

    Plaintiff Carl Dwayne Crawford, proceeding pro se and in forma pauperis, brings this action against twenty-six Bureau of Prisons ("BOP") officers and employees, alleging they violated his First, Fifth, Eighth, and Fourteenth Amendment rights.[1]

---

[1]     Plaintiff misspells the names of defendants "Anita Cochoo," "Kettisha-Manson Walker," "Ramon Sanatabrisoto," "J. Schalansee," and "Brain Sudul." It is clear from defendants' motion to dismiss that these defendants' names are Anita Cocho, Kettisha Manson-Walker, Ramon Sanabriasoto, J. Schmalensee, and Brian Sudul, and the Court will identify them as such throughout this Opinion.

1

Now pending is defendants' motion to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #84).

For the reasons set forth below, defendants' motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on the motion to dismiss, the Court accepts all factual allegations in the SAC as true and draws all reasonable inferences in plaintiff's favor, as summarized below.

At all times relevant to the SAC, plaintiff was incarcerated at the Federal Correctional Institute ("FCI") Otisville, and United States Penitentiary ("USP") Terre Haute.

According to plaintiff, for more than eighteen months, officers and employees of those institutions conspired to deprive plaintiff of his constitutional rights in retaliation for his "legal activity." (SAC ¶ 12). Plaintiff's legal activity seems to have consisted of filing prison grievances, challenging his conviction and sentence in United States v. Crawford, 03 Cr. 105 (E.D. Pa.), and participating in a deposition in a civil action filed by fellow inmate, Kevin Wright. Wright v. Condit, et al., 13 Civ. 2849 (S.D.N.Y.) (hereinafter, the "Wright case").

Plaintiff was deposed in connection with the Wright case on February 3, 2015. Plaintiff alleges he was supervised at his deposition by defendant Curesky, a correctional counselor, who afterward warned plaintiff "to recant his testimony" or he "would receive drama at Otisville and nothing can stop its wrath." (SAC ¶ 7).

Plaintiff alleges following his deposition he was subjected to numerous unwarranted cell searches, excessive force, false disciplinary charges, and a transfer to USP Terre Haute.

I.     February 6, 2015, Search

On February 6, 2015, defendant correction officer ("C.O.") Conklin searched plaintiff's cell. Plaintiff alleges C.O. Conklin seized plaintiff's personal property, and failed to provide a confiscation slip, as required by BOP policy.

On February 15, 2015, plaintiff filed a form BP-8 through BOP's Administrative Remedy Program ("ARP"), seeking an informal resolution of his claim regarding C.O. Conklin's allegedly retaliatory February 6 search. (SAC Ex. 1 at 6-7). On February 18, Curesky responded, permitting plaintiff to file a form BP-9 because his complaint was not resolved informally. Curesky also directed plaintiff to ask the confiscated properties lieutenant about the confiscated property, and informed him he could file a tort claim form. (SAC Ex. 1 at 10).

Plaintiff submitted a form BP-9 on February 21, 2015, and it was received by defendant Warden Recktenwald on February 26. (SAC Ex. 1 at 11). Warden Recktenwald responded on March 26, informing plaintiff that housing unit officers were required "to conduct a minimum number of random cell shakedowns per shift." (SAC Ex. 1 at 12). Warden Recktenwald referred plaintiff to the Federal Tort Claims Act, and stated plaintiff could appeal her response within twenty calendar days.

Plaintiff submitted a form BP-10 appealing Warden Recktenwald's response on April 3, 2015, but it was not received by BOP until April 20. (SAC Ex. 1 at 13-14). BOP's Northeast Regional Office issued a rejection on April 23, stating plaintiff's appeal was untimely. Plaintiff was instructed to resubmit his BP-10 and "provide staff verification" that the "untimely filing was not [his] fault." (SAC Ex. 1 at 15).

Plaintiff responded by letter on May 5, 2015, stating, "Warden M. Recktenwald made an extension of time to respond to the BP-9 when I received her response." (SAC Ex. 1 at 16). On

3

May 12, BOP's Northeast Regional Office issued the same rejection notice it previously issued, repeating the directive to "provide staff verification." (SAC Ex. 1 at 17).

To appeal the rejection of his form BP-10, plaintiff submitted a form BP-11 on May 18, 2015, stating, "This filing to Central Office is filed to establish exhaustion of my administrative process BP-8, BP-9, BP-10, BP-11. No relief or remedy is available in the BOP as usual." (SAC Ex. 1 at 18). On June 26, 2015, BOP's Central Office rejected plaintiff's appeal, stating it "concur[red] with rationale of regional office . . . for rejection," and instructing plaintiff to "follow directions provided on prior rejection notices" by "provid[ing] staff verification memo to regional office." (SAC Ex. 1 at 19).

II.     October 14, 2015, Search

On October 14, 2015, plaintiff saw Curesky and C.O. Conklin "staring at [him] via peripheral as if plotting and conspiring to commit ill will." (SAC ¶ 23). That evening, C.O. Conklin ordered plaintiff to exit his cell and leave the housing unit for a random cell search. Plaintiff initially objected to leaving the housing unit, then complied.

Plaintiff alleges that when he left, defendants Lieutenant ("Lt.") Poitras, Lt. Palmer, C.O. Caquias, and C.O. Corrice threw plaintiff into a wall, saying "'you think you are one of those rebel niggers huh and think you are going to disobey direct orders and there's no repercussions?'" (SAC ¶ 43). Lt. Poitras told plaintiff he should "withdraw the pending grievances and recant any testimonies against Otisville's staff," and punched plaintiff in the face. (SAC ¶ 44). Plaintiff was interrogated about his refusal to comply with C.O. Conklin's order, and then transferred to the segregated housing unit ("SHU").

On November 7, 2015, plaintiff filed a form BP-10 marked "sensitive," contesting his alleged failure to comply with C.O. Conklin's October 14, 2015, order. (SAC Ex. 2 at 7).

4

Plaintiff also challenged C.O. Conklin's failure to provide him a confiscation slip, and purported destruction of his "legal materials and other items." (Id.). On November 17, the Northeast Regional Office rejected plaintiff's form BP-10, stating "the issue you raised is not sensitive . . . you must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level." (SAC Ex. 2 at 8).

III.    Additional Searches

Plaintiff alleges his cell was searched and "disarranged" by C.O. Schneider on November 5, 2015, and defendant Captain Whinnery on November 13, 2015. (SAC ¶ 108). According to plaintiff, both searches were at the direction or in support of Curesky. On January 22, 2016, Captain Whinnery again searched and "disarranged" plaintiff's cell. (SAC ¶ 119).

On January 24, 2016, plaintiff emailed defendant Lt. Susney to complain of "'ongoing'" harassment, including the destruction of his property by C.O.s Conklin and Ramos, and Captain Whinnery's January 22 search. (SAC ¶ 118 & Ex. 3 at 2).[2] Plaintiff alleges Lt. Susney did not respond to his email.

IV.    Weapons Possession Charge

On February 29, 2016, defendant C.O. Bastedo filed an incident report stating he searched plaintiff's cell, and found two homemade weapons in his locker. (SAC Ex. 3 at 4). According to plaintiff, the weapons did not belong to him and were planted by C.O. Bastedo. Defendant Lt. Sudul placed plaintiff in SHU, and plaintiff was charged with "Prohibited Act 104," possession of a weapon. (SAC Ex. 3 at 8).

---

[2] Plaintiff's email also complains about a January 21, 2016, search conducted by C.O. Christensen, but that search is not otherwise mentioned in the SAC.

On March 15, 2016, defendant Banks, a disciplinary hearing officer, held a hearing and found plaintiff guilty of weapons possession. Banks revoked forty-one days of good conduct time and imposed twenty-one days' disciplinary segregation, and five months' loss of email privileges. (SAC Ex. 3 at 8). According to plaintiff, Banks should have provided a written record of the hearing proceedings "within 15 work days of the decision," but failed to do so. (SAC ¶ 136).

On April 10, 2016, plaintiff filed a form BP-10 marked "sensitive," challenging Banks's failure timely to provide a hearing report, and seeking to have the matter "vacated and expunged." (SAC Ex. 3 at 12). On April 15, the Northeast Regional Office rejected plaintiff's form BP-10, because page four of the form was illegible, and because he "did not provide a copy of the DHO report" he wished to appeal. (SAC Ex. 3 at 13).

On April 18, 2016, plaintiff responded from SHU, explaining that he did not receive the DHO report until April 15, and the pen in SHU was inadequate to complete the form. (SAC Ex. 3 at 13). On May 25, defendant J.L. Norwood partially granted plaintiff's appeal. Norwood's response stated, "A review of your appeal reveals questions concerning the disciplinary record. Accordingly this disciplinary action is being remanded for further action." (SAC Ex. 3 at 15).

On June 21, 2016, plaintiff submitted a form BP-11, stating the "only remedy for relief should be matter vacated and expunged." (SAC Ex. 3 at 16). On December 29, 2016, plaintiff received sentence monitoring computation data indicating his forty-one days of good conduct time were restored. (SAC Ex. 4 at 3).

V.  Transfer Requests and Transfer

On March 11, 2015, plaintiff requested an institutional transfer from defendant Manson-Walker because he possessed "low custody points." (SAC ¶ 19). On September 3, 2015,

6

Manson-Walker told plaintiff his request was refused by Warden Recktenwald and defendant C.O. Cocho, who considered plaintiff a "trouble maker with his legal activity and filing complaints." (SAC ¶ 21).

On November 19, 2015, Manson-Walker sent plaintiff a custody classification form rating his living skills "poor," and increasing his security score. (SAC ¶ 115). Plaintiff alleges that when he questioned the increase, Manson-Walker said, "'you will not leave Otisville ever as long as I'm your Case Manager. . . . This is what happens when you choose to testify for other inmates.'" (Id.). According to plaintiff, Manson-Walker began "jacking up" his low custody score in 2013, "without just cause or reason." (Id.)

On May 1, 2016, plaintiff was transferred to USP Terre Haute. According to plaintiff, Director Samuels, Lt. Susney, Warden Baltazar, Captain Whinnery, Cocho, Manson-Walker, Norwood, and Banks, "conspired by increasing plaintiff's custody level points to transfer him to [a] high security penitentiary." (SAC ¶ 144). Plaintiff alleges he "was transferred to Terre Haute far away from family because he complained about FCI-Otisville prison officials." (SAC ¶ 147).

VI. August 18, 2016, Search

According to an incident report, defendant Schmalensee, a case manager at USP Terre Haute, searched plaintiff's cell on August 18, 2016. The incident report states Schmalensee found and seized a "notebook that contained Uniform Commercial Code . . . papers [that] instruct inmates on how to file false liens against government employees for the purpose of threatening them." (SAC ¶ 149). Plaintiff alleges he was not provided a confiscation slip for his notebook. Plaintiff was charged with possession of unauthorized materials, and disciplined with sixty days' loss of email privileges.

7

On August 19, 2016, plaintiff emailed defendant Warden Daniels, seeking the return of his notebook. According to plaintiff, Warden Daniels did not respond.[3]

On August 26, 2016, plaintiff filed a form BP-8 challenging the seizure of his property without a confiscation slip, and the charge for possession of unauthorized materials. Plaintiff received no response, and filed a form BP-9 on September 8, 2016, raising the same issues. Plaintiff's form BP-9 was rejected by USP Terre Haute's administrative remedy coordinator on September 13, 2016. The rejection notice instructed plaintiff to "file a separate request/appeal for each unrelated issue or incident report." (SAC Ex. 5 at 5).

Plaintiff submitted a form BP-10 on September 26, 2016, again contesting the confiscation of his notebook and the charge for possession of unauthorized materials. (SAC Ex. 5 at 8). The North Central Regional Office rejected plaintiff's BP-10 on October 3, 2016. The rejection notice stated, "property issue needs to have informal attempt completed prior to filing BP9," and instructed plaintiff to "file incident report appeal separately." (SAC Ex. 5 at 9).

On October 26, 2016, plaintiff submitted a form BP-11, stating that the rejection of his form BP-10 was "unavailing and meritless." (SAC Ex. 5 at 10). Plaintiff stated, "I'm being deprived to exhaust my appeals with an answer to the issues. The administrative remedy process is not available to [me]. A remedy becomes 'unavailable' if prison officials do not respond to a properly filed grievance." (Id.)

BOP's Central Office rejected plaintiff's BP-11 on November 21, 2016, stating it concurred with the regional office's rationale for rejection. The rejection notice instructed

---

[3] The attachments to plaintiff's SAC indicate Warden Daniels in fact responded to plaintiff's email on September 19, 2016. (See SAC Ex. 5 at 7).

8

plaintiff to "follow directions and re-submit at institution level" and "get help from unit team." (SAC Ex. 5 at 11).

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral'

9

to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d at 134).

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Application

A. Exhaustion of Administrative Remedies

Defendants argue plaintiff failed to exhaust available administrative remedies for each of his claims, with the exception of his claim regarding Banks's failure timely to provide a hearing record.

The Court agrees.

10

1. <u>BOP Administrative Remedy Program</u>

The Prison Litigation Reform Act ("PLRA") provides, "[n]o Action shall be brought with respect to prisons under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "requires proper exhaustion," meaning that prisoners must "compl[y] with the system's critical procedural rules." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93, 95 (2006). Specifically, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id</u>. at 90–91.

The BOP's ARP, 28 C.F.R. § 542.10, <u>et</u> <u>seq</u>., sets forth procedures that inmates in BOP custody must follow to exhaust administrative remedies. First, an inmate shall "present an issue of concern informally to staff." 28 C.F.R. § 542.13(a). If the issue is not resolved informally, then the inmate may submit to the warden a formal written request for administrative remedy, a form "BP-9," within twenty days of the occurrence which gave rise to the complaint. 28 C.F.R. § 542.14(a). If multiple unrelated issues are included on a single form, "the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue." <u>Id</u>.

"An inmate who is not satisfied with the Warden's response [to the form BP-9] may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). "An inmate who is not satisfied with the Regional Director's response [to the form BP-10] may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." <u>Id</u>.

An inmate who reasonably believes an issue is "sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution," may skip over the informal resolution and request to the warden, and submit a form BP-10 "directly to the appropriate Regional Director." 28 C.F.R. § 542.14(d)(1).

### 2. Plaintiff's Failure to Exhaust

Plaintiff's allegations and the exhibits to the SAC illustrate that with respect to some of the incidents giving rise to the complaint plaintiff failed properly to exhaust his administrative remedies, and with respect to others, plaintiff never even pursued his administrative remedies.

First, with respect to the February 6, 2015, October 15, 2015, and August 18, 2016, cell searches and related property confiscations, the exhibits to the SAC illustrate that plaintiff did not comply with instructions to correct procedural errors, and thus failed properly to exhaust.

Further, with respect to the following incidents, plaintiff's allegations indicate he never initiated the ARP, either by seeking an informal resolution, or by filing a form BP-9, or form BP-10 for issues he perceived to be sensitive: the (i) September 3, 2015, denial of his transfer request; (ii) unwarranted "jacking up" of his custody score; (iii) alleged used of excessive force by Lt. Poitras, Lt. Palmer, C.O. Caquias, and C.O. Corrice in October 2015; (iv) November 2015 and January 2016 cell searches; (v) February 29, 2016, cell search and alleged planting of weapons; and (vi) retaliatory transfer to USP Terre Haute.

Plaintiff asserts the SAC "notes all of [plaintiff's] efforts to exhaust all administrative remedies pursuant to the Bureau of Prisons (BOP) administrative remedy process." (Opp'n at 2) (emphasis added). The Court interprets plaintiff's assertion as a representation that all of his efforts to pursue administrative remedies are included in his pleadings.

12

Thus, with respect to the above referenced incidents, plaintiff clearly failed to exhaust the administrative remedies set forth in the ARP.

Moreover, plaintiff has not alleged circumstances suggesting his failure to exhaust may be excused. A prisoner's duty to exhaust can be excused when (i) an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) "an administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use" and "so confusing that . . . no reasonable prisoner can use" it; or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1859–60 (2016).

Plaintiff argues he was intimidated from pursuing administrative remedies when he was "'warned' to recant his deposition testimony." (Opp'n at 4). However, plaintiff submitted numerous requests for administrative remedies after Curesky's alleged February 3, 2015, warning regarding plaintiff's deposition in the Wright case. Thus, plaintiff plainly "was not deterred from exhausting; he simply did not exhaust in accordance with the procedures." Riles v. Buchanan, 656 F. App'x 577, 581 (2d Cir. 2016).[4]

Plaintiff further argues prison officials failed to provide "the necessary forms in a timely manner." (Opp'n at 4). But plaintiff's argument is belied by his repeated filing of sequentially correct, but procedurally inappropriate, levels of appeal forms throughout the time period of the incidents giving rise to his complaint. More importantly, plaintiff does not identify when he requested ARP forms, who failed to provide them, and what steps he took after he requested but

---

[4] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

did not receive ARP forms. Plaintiff's conclusory assertion is insufficient to establish that officers were "unable or consistently unwilling to provide any relief." Ross v. Blake, 136 S. Ct. at 1859. See, e.g., Hicks v. Adams, 692 F. App'x 647, 648 (2d Cir. 2017) ("Although [plaintiff] asserts that prison staff did not transmit appeals he attempted to submit, he does not state when he submitted the appeals, to whom, and what, if any, steps he took after the documents were not filed.").

Accordingly, plaintiff failed to exhaust his administrative remedies, and that failure cannot be excused. Thus, the Court must dismiss these claims.

B.     Banks's Failure Timely to Provide a Hearing Record

Defendants argue plaintiff fails to state a constitutional violation with regard to Banks's failure timely to provide a record of plaintiff's March 15, 2016, disciplinary hearing.

The Court liberally construes plaintiff's allegations as a Fourteenth Amendment procedural due process claim, and agrees plaintiff fails to state a constitutional claim.

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). Prisoners subject to disciplinary proceedings have a liberty interest only when "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

The Court fails to see how plaintiff's delayed receipt of the disciplinary hearing record resulted in any hardship. Despite the delay, plaintiff was able to pursue administrative remedies regarding the hearing and to obtain a favorable result.

14

Moreover, to the extent plaintiff's claim is that the disciplinary measures imposed as a result of the hearing violated his due process rights, his allegations do not rise to the level of a constitutional violation. Following the hearing, plaintiff was disallowed forty-one days of good conduct time, confined to disciplinary segregation for twenty-one days, and lost five months of email privileges.

First, plaintiff acknowledges his good conduct time was restored in December 2016. (SAC ¶¶ 169–70).

Next, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009). Plaintiff does not allege the conditions in disciplinary segregation were more onerous than usual.

Finally, plaintiff was charged with possession of a weapon. Pursuant to the BOP's Inmate Discipline Program, 28 C.F.R. § 541.3, possession of a weapon is a prohibited act of the "greatest severity" for which "loss of privileges" is an "available sanction." As such, plaintiff's loss of email privileges for a few months was within the range of available sanctions, and therefore not atypical.

Accordingly, plaintiff's claim regarding his disciplinary hearing does not concern a liberty interest implicating his due process rights, and must be dismissed.

III.   Leave to Amend

The Court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). Moreover, when a pro se plaintiff fails to state a cause of action, the Court "should not dismiss without granting leave to amend at least once when a liberal reading of the

15

complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).

Here, reading the SAC liberally, the Court does not find any allegations that suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, in view of plaintiff's assertion that the SAC "notes all of his efforts to exhaust all administrative remedies" (Opp'n at 2), the Court finds that repleading would be futile, because the problems with the SAC are substantive, and supplementary and/or improved pleading will not cure its deficiencies. See id.

Accordingly, the Court declines to grant plaintiff further leave to amend.

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the pending motion (Docs. #84) and close this case.

Dated: April 30, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge